IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MOST REVEREND LAWRENCE E. BRANDT, *Bishop of the Roman Catholic Diocese of Greensburg, as Trustee of the Roman Catholic Diocese of Greensburg, a Charitable Trust*, ET AL.,

Plaintiffs,

v.

SYLVIA M. BURWELL, *In Her Official Capacity as Secretary of the U.S. Department of Health and Human Services*, ET AL.,

Defendants.

14cv0681
**ELECTRONICALLY FILED**

**MEMORANDUM OPINION**

Before the Court is Plaintiffs' Motion for Expedited Preliminary Injunction filed on May 30, 2014. Doc. no. 16. On June 3, 2014, the Court held a status conference with counsel for the Parties. Doc. no. 20. During this status conference, the Court noted – and Plaintiffs concurred – that the issue presented by Plaintiffs' preliminary injunction had to be decided by June 30, or July 1, 2014. Id. at 5-6.

Given the fast-approaching June 30-July 1, 2014 deadline, the Court asked Defendants (hereinafter "the Government") if there would be any objection to the Court ruling on the Motion for Expedited Preliminary Injunction based solely upon a written record. Id. at 7. The Government indicated that it had no objection to deciding the Motion for Expedited Preliminary Injunction on the written record. Id. Finally, as a last order of business during this June 3, 2014 status conference, the Court and counsel for the Parties selected July 16 and 17, 2014, as the dates upon which a permanent injunction hearing would be held. Id.

Following the status conference, counsel for the Parties filed a Stipulation of Undisputed Facts. Doc. no. 22. The Government's Response to Plaintiffs' Motion for Expedited Preliminary Injunction was filed on June 10, 2014. Plaintiffs filed a Reply Brief on June 13, 2014.[1] Doc. no. 23.

Now, upon review of the written record, and for reasons set forth in greater detail below, the Court will grant Plaintiffs' Motion for Expedited Preliminary Injunction.

## I. Preliminary Injunction Standard

The primary purpose of a preliminary injunction is to maintain the *status quo* until a decision on the merits of the case is rendered. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id*.

"Four factors determine whether a preliminary injunction is appropriate: '(1) whether the movant has a reasonable probability of success on the merits; (2) whether the movant will be

---

[1] Counsel for the instant Parties have recently appeared before this Court in two other cases: *Persico v. Sebelius*, case no. 13-cv-303, and *Zubik v. Sebelius*, case no. 13-cv-1459. In both *Persico* and *Zubik*, counsel for the Plaintiffs filed Motions for Expedited Preliminary Injunction and the Court held evidentiary hearings on those Motions before issuing its Opinion and Order granting the preliminary injunctions in both cases. In *Persico* and *Zubik*, the Government did not oppose those Plaintiffs' Motions for Permanent Injunction (which this Court then granted), however, the Government did appeal the Court's decision to grant the permanent injunctions. The propriety of the *Perisco* and *Zubik* injunctions is currently pending before the United States Court of Appeals for the Third Circuit. The issue raised by the *Persico* and *Zubik* Plaintiffs in their Motions for Expedited Preliminary Injunction is the same issue raised by Plaintiffs in the instant case. In addition, the *Persico* and *Zubik* Plaintiffs were the Bishops of the Dioceses of Erie and Pittsburgh, the Dioceses of Erie and Pittsburgh, and the Catholic Church's respective religious affiliated/related charitable and educational organizations within those Dioceses, making them identical in all but geography to Plaintiffs in this case. Thus, this Court and counsel for the instant Parties are familiar with the legal issues presented by this Motion for Expedited Preliminary Injunction as well as the application of the law to these particular Plaintiffs. Accordingly, counsel for the Parties were willing to enter into factual stipulations, allow the Court to decide the Preliminary Injunction on the written record, and schedule a permanent injunction hearing.

irreparably harmed by denying the injunction; (3) whether there will be greater harm to the nonmoving party if the injunction is granted; and (4) whether granting the injunction is in the public interest.'" *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 302 (3d Cir. 2013) (quoting *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 252 (3d Cir. 2002)) (quoting *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 170 (3d Cir. 2001)).

"A plaintiff seeking an injunction must meet all four criteria, as '[a] plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate.'" *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dept. of Health and Human Servs.*, 724 F.3d 377, 382 (3d Cir. 2013) (quoting *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)); *accord*, *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1438 (3d Cir. 1994)( "The injunction should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief.").

As to the first criterion, the movant bears the burden of proving a reasonable probability of success on the merits. "[O]n an application for preliminary injunction, the plaintiff need only prove a prima facie case, not a certainty that he or she will win." *Highmark*, 276 F.3d at 173, (citing 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.3 (Civil 2d ed. 1995)).

The second criterion requires the movant prove that "irreparable injury is likely in the absence of an injunction" – the mere "possibility" of such irreparable harm "is too lenient." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). "While the burden rests upon the moving party to make these [first] two requisite showings, the district court 'should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.'" *Acierno v. New*

*Castle County*, 40 F.3d 645, 653 (3d Cir. 1994), (quoting *Delaware River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)) (footnote omitted).

In order to satisfy the third criterion, this Court must find "that the party seeking the injunction would suffer more harm without the injunction than would the enjoined party if it were granted." *Pittsburgh Newspaper Printing Pressmen's Union No. 9 v. Pittsburgh Press Co.*, 479 F.2d 607, 609 -610 (3d Cir. 1973). In *Winter*, the Supreme Court of the United States noted that although it did "not question the seriousness of [the movant's] interests, . . . the balance of the equities and consideration of the overall public interest in this case tip[ped] strongly in favor of the [non-moving party]." 555 U.S. at 26. Thus, this criterion requires this Court to employ a balancing test that compares the harms the movant and non-movant would suffer and then weighs them to discern which party would be more greatly harmed by the Court's grant or denial of the injunction.

The fourth and final criterion is closely tied to the third in that it requires this Court to determine if the public's interest will be furthered or harmed by the issuance of a preliminary injunction. *See Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F.Supp.2d 581, 597-98 (W.D. Pa. 2009) ("With regard to the public interest prong, the court finds that granting the temporary restraining order is in the public interest. The focus of this prong is 'whether there are policy considerations that bear on whether the order should issue,'" (citing 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.4 (Civil 2d ed. 1995)). "'The grant or denial of a preliminary injunction is committed to the sound discretion of the district judge, who must balance all of these factors in making a decision.'" *Spartacus, Inc. v. Borough of McKees Rocks*, 694 F.2d 947, 949 (3d Cir. 1982) (quoting *Penn Galvanizing Co. v. Lukens Steel Co.*, 468 F.2d 1021, 1023 (3d Cir. 1972)).

**II. Substance of Plaintiffs' Motion for Expedited Preliminary Injunction**

Turning to the instant matter, Plaintiffs seek a preliminary injunction enjoining the Government from enforcing 42 U.S.C. § 300gg-13(a)(4) – as further regulated by 45 C.F.R. § 147.130(a)(1)(iv) – as it applies to them and their group health plans. Plaintiffs represented to the Court that Plaintiffs' applicable group health care plan needs to be renewed on or about June 30, or July1, 2014. See doc. no. 20, pp. 5-6, transcript of proceedings held on June 5, 2014. The renewed group health care plan will be subject to the aforementioned statute and regulation. Based on the filings in this case, such application of the law to the renewed health plans would essentially place Plaintiffs in a position where compliance with the aforementioned statute and regulation will cause them to violate their sincerely held religious beliefs; or, their conscience disregard of the statute and regulation will cause them to potentially incur large monetary fines and/or other penalties.

The statute at issue here – 42 U.S.C. § 300gg-13(a)(4) – is part of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), and the Health Care and Education Reconciliation Act, Pub. L. No. 111-152, 124 Stat. 1029 (2010) (hereinafter "ACA"). Section 1001 of the ACA requires all group health plans and health insurance issuers that offer non-grandfathered, non-exempt group or individual health coverage to provide coverage for certain preventive services without cost-sharing, including, "[for] women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration [("HRSA")]." 42 U.S.C. § 300gg-13(a)(4).

In addition to the statute at issue here, there is a regulation which allows HRSA to "establish exemptions" from group health plans maintained by "religious employers" with

respect "to any requirement to cover contraceptive services[.]" *See* 45 C.F.R. § 147.130(a)(1)(iv)(A); *see also Gilardi v. Dept. of Health and Human Svcs.*, 733 F.3d 1208 (C.A. D.C. 2013).

The issue before this Court is whether Plaintiff-Bishop Brandt, as Trustee of the Diocese of Greensburg, a Charitable Trust, and Plaintiff-Diocese of Greensburg, as the beneficial owner of Greensburg series of the Catholic Benefits Trust, which are exempt from the provisions of the ACA requiring employers to provide health insurance coverage for contraceptive products, services, and counseling (hereinafter "the contraceptive mandate"), are divisible from their nonprofit, religious affiliated/related charitable and educational organizations; and which, under the current provisions, will be compelled to facilitate/initiate coverage of contraceptive products, services, and counseling, beginning July 1, 2014, in violation of their sincerely-held religious beliefs.

Plaintiffs contend the contraceptive mandate, as applied via the "accommodation," requires them to facilitate/initiate the process for providing health insurance coverage for abortion-inducing drugs, sterilization services, contraceptives, and related educational and counseling services ("contraceptive products, services, and counseling"). Per the "accommodation," an organization must self-certify that it: (1) "opposes providing coverage for some or all of [the] contraceptive services"; (2) is "organized and operates as a nonprofit entity"; and (3) "holds itself out as a religious organization." The organization must then provide a signed self-certification to its insurance company, or if self-insured, to its third party administrator ("TPA"). 26 CFR § 54.9815-2713A(a).

The Government counters that Plaintiffs cannot prevail on their Motion in the instant matter (1) for the same reasons set forth in its Opposition to the two Motions for Expedited

Preliminary Injunction in the *Zubik* and *Persico* cases, and (2) for a new reason (which the Court has termed the "self-insured church plan" reason, discussed *infra*.). The Court disagrees.

**A. Uncontested Facts**

As noted above, the Parties stipulated to several facts. Doc. no. 22. Among these stipulated facts was a concession by the Government that Plaintiffs' religious beliefs – as set forth in the written submissions proffered by Plaintiffs – are sincere. Doc. no. 22, ¶ 2.

Although the Court carefully considered all of Plaintiffs' sincerely-held religious beliefs as set forth in their submissions (see doc. nos. 17-3 to 17-7), because the Court writes primarily for the benefit of the Parties, only a few of those beliefs shall be reiterated herein as follows:

- Catholic religious teaching prohibits subsidizing, providing, and/or facilitating coverage for abortion-inducing drugs, sterilization services, contraceptives, and related counseling services. The term contraceptives refers to artificial contraceptives, as opposed to Natural Family Planning that is consistent with Catholic teachings. One of the central tenets of this system is belief in the sanctity of all human life from the moment of conception to natural death, and the dignity of all persons. Doc. no. 17-3, ¶ 12.

- One outgrowth of belief in human life and dignity is Plaintiffs' well-established belief that "[h]uman life must be respected and protected absolutely from the moment of conception." As a result, Plaintiffs believe that abortion is prohibited and that they cannot facilitate the provision of abortions. Doc. no. 17-3, ¶ 14.

- Furthermore, Plaintiffs adhere to Catholic teachings that prohibit any action which "render[s] procreation impossible" and which, more specifically, regard direct sterilization as "unacceptable." Plaintiffs also believe that contraception is

immoral, and by expressing that conviction, they routinely seek to "influence" or persuade their fellow citizens of that view. Doc. no. 17-3, ¶ 15.

In addition to stipulating to the sincerity of the above religious beliefs (as well as several others), the Government also stipulated to the following:

- Consistent with Church teachings regarding the sanctity of human life, the Diocesan health plan excludes coverage for abortion-inducing drugs, sterilization services, contraceptives (except when used for non-contraceptive purposes), and related counseling services. Doc. no. 17-3, ¶ 16.

- The regulations at issue in this lawsuit (the "Mandate"), require employers, on pain of substantial financial penalties, to directly facilitate access to abortion-inducing drugs, sterilization services, contraceptives, and related counseling services through their employee health plans. Freedom of religion includes not just freedom to practice religion, but also freedom from coercion by civil authorities that would violate the principles adhered to by a religion. Doc. no. 17-3, ¶ 17.

- It violates Plaintiffs' religious beliefs to facilitate the objectionable coverage and services, even if Plaintiffs do not have to contract, arrange, pay, or refer for the objectionable coverage and services. Doc. no. 17-3, ¶ 19.

**B. Application of the Facts to the Law**

In light of these uncontested facts, the Court now considers the four criteria Plaintiffs must prove in order to obtain a preliminary injunction and, as set forth below in detail, concludes that Plaintiffs can meet each of the four criteria.

### 1. Likelihood of Success on the Merits

#### a. Background

Plaintiffs' Motion for Expedited Preliminary Injunction asks this Court to enjoin the issuance, application, and enforcement of a federal regulation, specifically 45 C.F.R. § 147.130(a)(1)(iv), arguing that they are likely to succeed on their RFRA and First Amendment claims.

Like *Persico* and *Zubik*, some of the Plaintiffs here are non-profit, religious affiliated/related entities which fail to meet the definition of a "religious employer" entitled to the "exemption." As noted in this Court's prior Opinion in *Persico* and *Zubik*, some nonprofit employers could receive an "accommodation," provided those entities would self-certify that they were "eligible organizations," and thereby avoid directly providing contraceptive products, services, and counseling.

In order to qualify for the religious employer "accommodation," and thus avoid directly providing or paying for contraceptive products, services, and counseling through their own health plans, Plaintiffs in this cases must self-certify (in a form and manner specified by the Secretary), that they: (1) oppose providing such contraceptive coverage on account of their religious objections; (2) are organized and operate as nonprofit entities; and (3) hold themselves out as a religious organization. See 45 C.F.R. § 147.131(b); *see also* 78 Fed. Reg. at 39,874-75. "The self-certification must be executed by a person authorized to make the certification on behalf of the organization, and must be maintained in a manner consistent with the record retention requirements under section 107 of the Employee Retirement Income Security Act of 1974." Id.

9

In the *Persico* and *Zubik* cases, this Court found as fact that Plaintiffs' self-certification forms must be executed by the Bishop for the Diocese of Erie (with respect to the Erie Plaintiffs in 13-cv-303), and by the Bishop for the Diocese of Pittsburgh (with respect to the Pittsburgh Plaintiffs in 13-cv-1459), or executed at their directive. Here, the same is true for the Bishop for the Diocese of Greensburg. Doc. no. 17-3, ¶¶ 29-30.

### b. Substantial Burden under RFRA

Plaintiffs contend here, as they did in *Persico* and *Zubik,* that by requiring self-certification and thereby facilitating or initiating the process of providing contraceptive products, services, and counseling, via a third party, the "accommodation," violates their rights under the RFRA.

The RFRA provides, in pertinent part, as follows:

> (a) In general
>
>> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
>
> (b) Exception
>
>> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--
>>
>>> (1) is in furtherance of a compelling governmental interest; and
>>>
>>> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000bb-1.

The Government – by adopting its prior arguments in the *Persico* and *Zubik* cases – essentially argues that the "accommodation" merely requires the Greensburg Bishop (or his

designee) to sign a self-certification form on behalf of the respective nonprofit, religious affiliated/related entities, and thus, does not rise to the level of a "substantial burden," as that term has been defined in connection with the RFRA.

Given the Government's concessions that: (1) Plaintiffs' beliefs are sincerely held, and (2) it violates Plaintiffs' religious beliefs to facilitate the objectionable coverage and services, even if Plaintiffs do not have to contract, arrange, pay, or refer for the objectionable coverage and services, the Court disagrees with the Government that Plaintiffs' ability or inability to merely sign a piece of paper (meaning, the self-certification form), does not impart a substantial burden under the RFRA upon the instant Plaintiffs.

Accordingly, for the same reasons set forth in pages 48 though 53 of its Opinion in *Persico* and *Zubik* (doc. nos. 75 in both cases), the Court concludes that the religious employer "accommodation" places a substantial burden on Plaintiffs' right to freely exercise their religion – specifically, their right to not facilitate or initiate the provision of contraceptive products, services, or counseling.

### c. Compelling Governmental Interest and Least Restrictive Means under the RFRA

Again, because the Court writes primarily for the benefit of the Parties and because the Parties have in essence adopted their prior arguments set forth in detail in *Persico* and *Zubik*, as they relate to these sub-issues, the Court likewise adopts its analysis and rationale from those cases. Accordingly, the Court will conclude as it did in *Persico* and *Zubik*, that: (1) the Government, here, has failed to establish that its governmental interests are "of the highest order" such that "those not otherwise served can overbalance legitimate claims to the free exercise of religion" *Yoder*, 406 U.S. at 215; and (2) the Government failed to prove that it utilized the least restrictive means of advancing its interests.

11

### d. Conclusion – Likelihood of Success

Based on the foregoing analysis, the Court finds that Plaintiffs are likely to succeed on the merits, and thus, they have met the first element of the preliminary injunction test.

### 2. Irreparable Harm to Plaintiffs

In the context of a preliminary injunction, irreparable harm is harm that cannot be adequately compensated at a later date in the ordinary course of litigation. *Acierno v. New Castle Cnty*. 40 F.3d 645, 653 (3d Cir. 1994) (In general, to show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.) The Supreme Court of the United States has held "[t]he loss of First Amendment freedoms," which implicates the Free Exercise Clause as protected by the RFRA, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976).

In this case, Plaintiffs need to decide by June 30, or July 1, 2014, whether to sign the self-certification form, thereby violating their sincerely-held religious beliefs. Plaintiffs could, alternatively, decline to sign the form and face potentially large penalties.

In addition, this Court notes that the United States District Court for the Western District of Oklahoma recently relied upon the *Hobby Lobby* decision for the proposition that "establishing a likely RFRA violation satisfies the irreparable harm factor." See *Catholic Benefits Association LCA, et al. v. Sebelius,* case no. 14-cv- 240-R, (W.D. Ok. decided June 4, 2014). This Court in the *Persico* and *Zubik* cases did not rely on the *Hobby Lobby* proposition to establish that Plaintiffs met their burden of proving the irreparable harm factor. In *Persico* and *Zubik*, this Court conducted a preliminary hearing whereby testimony was proffered (and deemed credible) that irreparable harm would indeed ensue.

Here, because this Court is ruling strictly on the written submissions of Plaintiffs, and because the Government has stipulated that the case is factually identical in all material respects to *Persico* and *Zubik*,[2] the Court concludes that Plaintiffs may opt to continue to provide health coverage to their employees, but opt to conscientiously object to the contraceptive mandate and the "accommodation" by refusing to sign the self-certification form, thereby potentially suffering penalties which could negatively impact Plaintiffs. Furthermore, the Court concludes that the Plaintiffs provide services to individuals who depend upon them for food, shelter, educational, and other basic services. The harm to Plaintiffs, and the ripple effect of that harm impacting members of the public who depend upon Plaintiffs for food, shelter, educational, and other basic services, is such that Plaintiffs could never be adequately compensated at a later date in the ordinary course of this litigation.

Thus, the Court concludes Plaintiffs stand to suffer irreparable harm if the injunction is not granted.

### 3. Greater Harm to the Government and the Public Interest

The Government's stated interests – which the Government classifies as "the balance of the equities" and "the public interest" – are similarly insufficient to outweigh the harm faced by Plaintiffs. See doc. no. 23, pp. 6-8. Because the Government has stipulated that the case is factually identical in all material respects to *Persico* and *Zubik*, the Court concludes that the harm to the Government is outweighed by the harm to the Plaintiffs at this juncture. In addition, the Court concludes that keeping the Parties at *status quo* at this point in time is best for the Parties as well as the public.

The Court's decision in this case to quickly move for a permanent injunction hearing – which, as noted above, has been scheduled for July 16 and 17, 2014 – will enable this Court to

---
[2] See doc. no. 22, ¶ 5.

revisit all issues presented in a thoughtful and orderly manner. Accordingly, the Court concludes that granting the preliminary injunction furthers the public interest. It is in the public best interest to have the issues and evidence presented herein and considered in a thoughtful and orderly manner by way of a permanent injunction hearing. Moreover, by entering a preliminary injunction and preserving the *status quo*, the Court will prevent any reduction in the public services provided by Plaintiffs which thereby serves the best interests of the public.

**C. The Government's "New" Argument in Opposition to a Preliminary Injunction**

As this Court noted at the beginning of this Opinion (see pp. 6-7, *infra.*), the Government contends that Plaintiffs "may offer a self-insured 'church plan' to their employees." Doc. no. 23, p. 2. The Government concedes that Plaintiffs' documents currently before this Court fail to provide any indication of such a self-insured church plan. Id. The Government also concedes that there was no such indication of a self-insured church plan in either the *Persico* or *Zubik* cases. Id.

In support of its "self- insured church plan" contention, the Government relies on filings from a United States District Court case for the Eastern District of Montana, where the plaintiffs in that case – who were represented by the same law firm that is representing the instant Plaintiffs – declared that all Catholic entities participate in "church plans." Id. The Government explains its belief in the importance of this representation contending that it "lacks regulatory authority to require third-party adminstrators ("TPAs") of self-insured church plans to make the separate payments for contraceptive services for participants and beneficiaries in such plans under the challenged accommodations." Id. at 3. The Government argues that if all Catholic entities participate in "self-insured church plans," Plaintiffs' request for an the instant injunction

14

would necessarily be rendered moot – or would have to be denied – because Plaintiffs will not be able to establish an injury in fact. Id. at 2.

The Government indicates that when it attempted to get an admission from Plaintiffs' counsel with respect to this declaration, counsel for the instant Plaintiffs refused to take a position with respect to the specific health insurance plan at issue in this case. Id.

The Court declines to address this "self-insured church plan" argument raised by the Government at this juncture of the proceedings because: (1) as indicated above, the Court is deciding the instant Plaintiffs' Motion for Expedited Preliminary Injunction solely upon the written record presented here; (2) the only facts before this Court are the facts of this case; (3) at this juncture of the proceedings no facts have been presented to this Court related to this "new" issue – *i.e.,* the existence of a self-insured church plan, and the legal implications, if any, of such a self-insured church plan on the challenged statute and regulation – being raised by the Government, and (4) this Court cannot consider factual assertions raised in the United States District Court for the Eastern District of Montana for purposes of adjudicating the instant motion.[3]

**III. Conclusion**

The Court concludes that Plaintiffs have met their burden of proving all four criteria of the preliminary injunction test under the RFRA, and thus, for the reasons set forth herein, Plaintiffs' Motions for Expedited Preliminary Injunction will be **GRANTED**. As noted above, the Court declines to address the "new" issue raised by the Government at this juncture due to the lack of any

---

[3] The Court is very interested in this issue, however, and will certainly entertain any factual assertions established by any Party related to this new argument during the permanent injunction hearing, scheduled for July 16-17, 2014.

facts present in this case upon which this Court could render a conclusion of law.  An appropriate Order of Court will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:	All Registered ECF Counsel and Parties